IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| FACTORY MUTUAL INSURANCE COMPANY as subrogee of Sabey Corporation, Sabey Construction, Inc. and SDC Austin LLC, SABEY CORPORATION, SABEY CONSTRUCTION, INC., a subsidiary to Sabey Corporation, and SDC Austin LLC, a subsidiary to Sabey Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ESS METRON, LLC, ZINCFIVE, LLC, ZINCFIVE POWER, INC., and ZINCFIVE, INC.<br><br>Defendants. | § § § § § § § § § § § § § § § § § § | CASE NO. 26-CV-01047-ADA-ML |

**PLAINTIFFS' SECOND AMENDED PETITION**

COMES NOW, Plaintiffs, Factory Mutual Insurance Company as subrogee of Sabey Corporation, Sabey Construction, Inc. and SDC Austin LLC, and Sabey Corporation, Sabey Construction, Inc., a subsidiary to Sabey Corporation, and SDC Austin LLC, a subsidiary to Sabey Corporation by and through their undersigned counsel, hereby complains of Defendants, ESS Metron, LLC, ZincFive, LLC, ZincFive Power, Inc. and ZincFive, Inc. (hereinafter collectively "Defendants"), for causes of action and would respectfully show the Court as follows:

## I.
## DISCOVERY

1. Pursuant to Rules 190.1 and 190.4 of the *Texas Rules of Civil Procedure*, notice is hereby given to the Court and the parties that the discovery to be completed in this case is intended to be conducted under Level Three of the stated rules unless otherwise ordered by the Court.

## II.
## PARTIES, VENUE, AND JURISDICTION

2. At all relevant times, Plaintiff Factory Mutual Insurance Company (hereinafter "Plaintiff FMIC") is a Rhode Island insurance company with its principal place of business located at 1301 Atwood Ave., Cranston, Rhode Island 02919. It is authorized to transact business and has transacted business in Texas. At all material times, Plaintiff FMIC was engaged in the insurance business and issued a policy of insurance to named insured Sabey Corporation pursuant to Policy No. 1123406. The policy also provided coverage to subsidiaries and related companies, including but not limited to Sabey Construction, Inc. and SDC Austin LLC. A copy of the policy is incorporated herein by reference and is available upon request.

3. Plaintiff, Sabey Corporation ("Plaintiff Sabey Corporation") was and is a corporation organized under the laws of Washington with a primary place of business located at 12201 Tukwila International Blvd, Fl 4, Floor 4, Tukwila, Washington 98168.

4. Plaintiff, Sabey Construction, Inc. ("Plaintiff Sabey Construction") was and is a corporation organized under the laws of Texas with a primary place of business located at 1300 Louis Henna Blvd., Round Rock, Texas 79664.

5. Plaintiff, SDC Austin LLC ("Plaintiff SDC Austin") was and is a limited liability company under the laws of Texas with a primary place of business located at 112201 Tukwila International Blvd, Fl 4, Floor 4, Tukwila, Washington 98168.

6. Upon information and belief, Defendant ESS Metron, LLC, (hereinafter "Defendant ESS Metron") is a Foreign Limited Liability Company with its primary place of business located at 1505 W. 3rd Avenue, Denver, Colorado 80223. At all material times hereto, Defendant ESS Metron was doing business in the State of Texas.

7. Upon information and belief, Defendant ZincFive, LLC, (hereinafter "Defendant ZincFive") is a Domestic Limited Liability Company with its primary place of business located at 20170 SW 112th Avenue, Tualatin, Oregon 97062. At all material times hereto, Defendant ZincFive was doing business in the State of Texas.

8. Upon information and belief, Defendant ZincFive Power, Inc., (hereinafter "Defendant ZincFive Power") is a Foreign Business Corporation with its primary place of business located at 20170 SW 112th Avenue, Tualatin, Oregon 97062. At all material times hereto, Defendant ZincFive Power was doing business in the State of Texas.

9. Upon information and belief, Defendant ZincFive, Inc., (hereinafter "Defendant ZincFive, Inc.") is a Foreign Business Corporation with its primary place of business located at located at 20170 SW 112th Avenue, Tualatin, Oregon 97062. At all material times hereto, Defendant ZincFive, Inc. was doing business in the State of Texas.

10. Venue is proper in Williamson County, Texas, because it is where all or a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred. Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1).

11. The Court has subject matter jurisdiction over the controversy because the amount in controversy exceeds the jurisdictional limits of this Court.

12. Pursuant to Tex. R. Civ. P. 47, the court has jurisdiction over the cause of action because the damage sought is within the jurisdictional limits of this Court and Plaintiffs seek monetary relief of over $250,000.00, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs. Plaintiffs hereby demand judgment for all other relief to which they deem themselves to be entitled.

## III.
## SERVICE

13. Defendant ESS Metron has previously been served.

14. Defendant ZincFive has previously been served.

15. Defendant ZincFive Power has previously been served .

16. Defendant ZincFive, Inc. has previously been served.

## IV.
## FACTS

17. At all times relevant hereto, Plaintiff FMIC insured the real and business property of named insured, Plaintiff Sabey Corporation, and related business entities/subsidiaries, including Sabey Construction and SDC Austin (Sabey Corporation and its related business entities/subsidiaries are referred to collectively as “Plaintiff Sabey”) located at 1300 Louis Henna Blvd., Round Rock, Texas 79664 (“Subject Property”).

18. The property was a newly constructed commercial facility owned by SDC Austin, LLC.

19. Defendant ESS Metron manufactures and installs Electronic Distribution Containers (hereinafter “EDC”) for distribution throughout the United States, including Texas and Williamson County.

20. Defendant ZincFive, manufactures and distributes batteries for use in manufacturing products and distribution throughout the United States, including the state of Texas and Williamson County.

21. Defendant ZincFive Power manufactures and distributes batteries for use in manufacturing products and distribution throughout the United States, including the state of Texas and Williamson County.

22. Defendant ZincFive, Inc. manufactures and distributes batteries for use in manufacturing products and distribution throughout the United States, including the state of Texas and Williamson County.

23. On or about August 4, 2022, Plaintiff Sabey Construction entered into a Material Supply contract with ESS Metron relating to work on the EDC that houses the switch gear and uninterrupted power source (hereinafter "UPS") batteries (attached as Exhibit A).

24. Subsequently, Defendant ESS Metron subcontracted with Defendant ZincFive, Defendant ZincFive Power, and Defendant ZincFive, Inc. to provide battery systems/batteries/battery units, Z5 13-80 Nickel-Zinc and/or Z5 13*90 Nickel-Zinc batteries (hereinafter "Battery Systems") to be incorporated into the UPS and EDC units.

25. Defendant ZincFive designed the Battery Systems that were provided to ESS Metron for the UPS.

26. Defendant ZincFive manufactured the Battery Systems that were provided to ESS Metron for the UPS.

27. Defendant ZincFive sold the Battery Systems to ESS Metron for the UPS.

28. Defendant ZincFive provided the Battery Systems to ESS Metron for the UPS.

29. Defendant ZincFive designed and manufactured the Battery Systems for various markets, including the Data Centers as per their website: Zincfive.com/industries/data-centers (Exhibit A).

30. Defendant ZincFive target the market with advertisements of the Battery Systems for Data Centers (Exhibit A).

31. Defendant ZincFive manufactures ZincFive-branded products (Exhibit A).

32. Defendant ZincFive sells ZincFive-branded products (Exhibit A).

33. Defendant ZincFive directs ZincFive branded battery products to Texas as they contracted with ESS Metron for a Texas based project.

34. Defendant ZincFive provides product services or support in Texas to end-users of ZincFive-branded battery products.

35. Defendant ZincFive's operations include all US-based sales of ZincFive branded battery products and after-sales services of ZincFive-branded batter products, including Texas.

36. Defendant ZincFive is now, and at all times mentioned in this petition was, in the business of designing, manufacturing, constructing, assembling, inspecting, and selling Battery Systems.

37. Defendant ZincFive is now, and at all times mentioned in this petition was, in the business of inspecting, maintaining, installing, and selling at retail to members of the public Battery Systems designed and manufactured by Defendant ZincFive.

38. Defendant ZincFive delivered the Battery System to ESS Metron.

39. Prior to the date of loss, Defendant ESS Metron manufactured, distributed, and installed a UPS in the electrical room at the Subject Property.

40. The subject UPS utilized battery units were manufactured by Defendant ZincFive, Defendant ZincFive Power, and Defendant ZincFive, Inc..

41. Prior to the March 22, 2024 incident, Plaintiff Sabey removed multiple ZincFive Battery Systems from the UPS cabinets as they were leaking and failing.

42. Plaintiff Sabey made Defendant ZincFive, Defendant ZincFive Power, Zincfive LCC, and Defendant ESS Metron aware of the failures.

43. Prior to the loss, Defendants replaced failing ZincFive Battery Systems in the UPS cabinets.

44. On or about March 22, 2024, the UPS and the associated Battery Systems within the EDC units caught fire, causing substantial damage to the Subject Property and equipment.

45. During the investigation, it was discovered that the fire was the result of failures associated with the UPS and Battery Systems incorporated within the EDC units.

46. During the investigation, upon information and belief, it was discovered that during the installation process, Defendant ESS Metron allowed for openings into the data center which allowed for smoke to enter the facility causing additional damages.

47. Further investigation determined that data analysis revealed over-current events sourcing into Rack 5, which sustained the most significant damage and is believed to be the point of origin of the fire.

48. Further investigation determined that the ZincFive batteries in the UPS failed, catching fire, and causing significant damages to Plaintiff Sabey and subsequently Plaintiff FMIC.

49. The data further reflects electrical anomalies occurring prior to the fire and multiple alarms that were triggered while Defendant ESS Metron's employees were present within the EDC container.

50. Upon information and belief, Defendant ESS Metron employees were troubleshooting these anomalies while permitting the system to continue operating, despite knowledge of the unsafe conditions.

51. At all relevant times, Defendant ESS Metron retained ownership and control of the racks and EDC units.

52. Upon demand by Plaintiff Sabey and pursuant to the insurance policy incorporated herein by reference, Plaintiff FMIC issued payments to Plaintiff Sabey for the damages incurred in the amount of Fourteen Million Four Hundred and Ten Thousand One Hundred and Thirty-Six Dollars and Eighty-Two Cents ($14,410,136.82).

53. Plaintiff Sabey also had a deductible amount of Fifty Thousand Dollars ($50,000.00).

54. Pursuant to the equitable and contractual subrogation laws, Plaintiff FMIC is subrogated to any right of recovery to the extent of their payments.

## V.
## COUNT ONE – NEGLIGENCE AGAINST DEFENDANT ESS METRON

55. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

56. As the manufacturer, distributor, and installer for the UPS at the Subject Property, Defendant ESS Metron owed a duty to consumers, like Plaintiff Sabey, to manufacture, distribute, and install its product in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail, and damage the property of consumers.

57. As the manufacturer, distributor, and installer for the UPS, Defendant ESS Metron also had a duty to manufacture its product so that if its product experienced an internal failure, the product would fail in a safe and reasonable manner and not cause significant damage to the property of consumers, like Plaintiff Sabey.

58. Defendant ESS Metron breached its duty owed to consumers, like Plaintiff Sabey when it failed to manufacture, distribute, and install the UPS in a reasonable, safe manner, and free from defects, and not in accordance with industry standards, so its product would not fail and cause a fire, which it did on March 22, 2024.

59. It was foreseeable to Defendant ESS Metron, or reasonably should have been foreseeable to Defendant ESS Metron, that if it manufactured, distributed, and installed the UPS in an unreasonable, unsafe, and defective condition, not in accordance with industry standards, the UPS would fail and cause property damage, as it did on March 22, 2024.

60. At the time of the fire loss at the subject property, the UPS was in the same condition as it was at the time it left the care, custody, and control of Defendant ESS Metron.

61. The unreasonable, unsafe, and defective condition was not known to Plaintiff Sabey, and could not have been known by Plaintiff Sabey based upon a reasonable and prudent inspection of Defendant ESS Metron's product.

62. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ESS Metron.

63. As a direct, proximate, and foreseeable result of Defendant ESS Metron's breach of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payments to or on behalf of Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

64. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy incorporated herein by reference, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC in compensation for the aforementioned damage pursuant to the insurance policy incorporated herein by reference.

65. As a result of the damages caused by Defendant ESS Metron of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

66. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## VI.
## COUNT TWO – NEGLIGENCE AGAINST DEFENDANT ZINCFIVE

67. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

68. As the manufacturer of the battery units contained in the UPS at the Subject Property, Defendant ZincFive owed a duty to consumers, like Plaintiff Sabey, to manufacture its products in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail and damage the property of consumers.

69. Defendant ZincFive breached its duty owed to consumers, like Plaintiff Sabey, when it failed to manufacture the battery units in a reasonable, safe manner, and free from defects, and not in accordance with industry standards, so its product would not fail and cause a fire, which it did on March 22, 2024.

70. It was foreseeable to Defendant ZincFive, or reasonably should have been foreseeable to Defendant ZincFive, that if it manufactured the subject battery units in an unreasonable, unsafe, and defective condition, not in accordance with industry standards, the UPS would fail and cause property damage, as it did on March 22, 2024.

71. At the time of the fire loss at the Subject Property, the ZincFive battery units were in the same condition as they were at the time they left the care, custody, and control of Defendant ZincFive.

72. The unreasonable, unsafe, and defective condition was not known to Plaintiff Sabey, and could not have been known by Plaintiff Sabey based upon a reasonable and prudent inspection of Defendant ZincFive's product.

73. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive.

74. As a direct and proximate result of Defendant ZincFive's breach of duties owed to consumers, like Plaintiff Sabey, the battery units manufactured by Defendant ZincFive failed, and caused significant damage to the Subject Property on March 22, 2024.

75. As a result of the damages caused by Defendant ZincFive of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

76. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## VII.
## COUNT THREE – NEGLIGENCE AGAINST DEFENDANT ZINCFIVE POWER

77. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

78. As the manufacturer of the battery units contained in the UPS at the Subject Property, Defendant ZincFive Power owed a duty to consumers, like Plaintiff Sabey, to manufacture its products in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail and damage the property of consumers.

79. Defendant ZincFive Power breached its duty owed to consumers, like Plaintiff Sabey, when it failed to manufacture the battery units in a reasonable, safe manner, and free from

defects, and not in accordance with industry standards, so its product would not fail and cause a fire, which it did on March 22, 2024.

80. It was foreseeable to Defendant ZincFive Power, or reasonably should have been foreseeable to Defendant ZincFive Power, that if it manufactured the subject battery units in an unreasonable, unsafe, and defective condition, not in accordance with industry standards, the UPS would fail and cause property damage, as it did on March 22, 2024.

81. At the time of the fire loss at the Subject Property, the ZincFive battery units were in the same condition as they were at the time they left the care, custody, and control of Defendant ZincFive Power.

82. The unreasonable, unsafe, and defective condition was not known to Plaintiff Sabey, and could not have been known by Plaintiff Sabey based upon a reasonable and prudent inspection of Defendant ZincFive Power's product.

83. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive Power.

84. As a direct and proximate result of Defendant ZincFive Power's breach of duties owed to consumers, like Plaintiff Sabey, the battery units manufactured by Defendant ZincFive Power failed, and caused significant damage to the Subject Property on March 22, 2024.

85. As a result of the damages caused by Defendant ZincFive Power of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

86. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to

the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## VIII.
## COUNT FOUR – NEGLIGENCE AGAINST DEFENDANT ZINCFIVE POWER, INC.

87. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

88. As the manufacturer of the battery units contained in the UPS at the Subject Property, Defendant ZincFive, Inc. owed a duty to consumers, like Plaintiff Sabey, to manufacture its products in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail and damage the property of consumers.

89. Defendant ZincFive, Inc. breached its duty owed to consumers, like Plaintiff Sabey, when it failed to manufacture the battery units in a reasonable, safe manner, and free from defects, and not in accordance with industry standards, so its product would not fail and cause a fire, which it did on March 22, 2024.

90. It was foreseeable to Defendant ZincFive, Inc., or reasonably should have been foreseeable to Defendant ZincFive, Inc., that if it manufactured the subject battery units in an unreasonable, unsafe, and defective condition, not in accordance with industry standards, the UPS would fail and cause property damage, as it did on March 22, 2024.

91. At the time of the fire loss at the Subject Property, the ZincFive battery units were in the same condition as they were at the time they left the care, custody, and control of Defendant ZincFive, Inc..

92. The unreasonable, unsafe, and defective condition was not known to Plaintiff Sabey, and could not have been known by Plaintiff Sabey based upon a reasonable and prudent inspection of Defendant ZincFive, Inc.'s product.

93. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive, Inc.

94. As a direct and proximate result of Defendant ZincFive, Inc.'s breach of duties owed to consumers, like Plaintiff Sabey, the battery units manufactured by Defendant ZincFive, Inc. failed, and caused significant damage to the Subject Property on March 22, 2024.

95. As a result of the damages caused by Defendant ZincFive Inc. of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

96. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## IX.
## COUNT FIVE – BREACH OF CONTRACT AGAINST DEFENDANT ESS METRON

97. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

98. The Plaintiffs agreed to retain the services of Defendant ESS Metron for the purpose of manufacturing, selling, and installing a UPS at the Subject Property.

99. An agreed term of the contract between Plaintiff Sabey and Defendant ESS Metron was that all materials would be free from any defect of any nature or description in the materials or workmanship.

100. An agreed term of the contract between Plaintiff Sabey and Defendant ESS Metron was that Defendant ESS Metron shall be responsible for damage caused by Defendant ESS Metron and for all repair or replacement of said damage, as determined by Plaintiff Sabey.

101. An implied term of the agreement between Plaintiff Sabey and Defendant ESS Metron was that the work would be completed in a skillful, prudent and workmanlike manner.

102. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ESS Metron.

103. Defendant ESS Metron breached its agreement with Plaintiff Sabey by manufacturing, distributing and installing a defective UPS to Plaintiff Sabey that ultimately caused a fire loss at the Subject Property.

104. As a result of Defendant ESS Metron's breach of the agreement, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

105. As a direct and proximate result of the carelessness, negligence, and recklessness of Defendant ESS Metron, Plaintiffs sustained extensive damage to the Subject Property.

106. As a direct and proximate result of Defendant ESS Metron's breach of their duties owed, Plaintiff Sabey incurred significant damages, for which Plaintiff FMIC paid for which Plaintiff FMIC now makes a claim.

107. As a result of the damages caused by Defendant ESS Metron of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

108. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## X.
## COUNT SIX – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANT ESS METRON

109. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

110. Defendant ESS Metron impliedly warranted that the UPS was fit for the particular purpose of providing continuous and reliable electrical backup power to the data center facility in the event of a power interruption.

111. Defendant ESS Metron, at the time of contracting with Plaintiff Sabey knew the particular purpose of the UPS and that the UPS and Battery Systems were to be used in a Data Center.

112. Plaintiff Sabey relied on Defendant ESS Metron to provide a UPS free from defects.

113. Rack 5 of the UPS system that contained ZincFive Battery Systems that failed and caused the fire.

114. The UPS was not fit for such particular purpose.

115. Plaintiff Sabey reasonably relied on Defendant ESS Metron's skill or judgement to select and furnish suitable goods, including the Battery Systems used in the UPS.

116. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ESS Metron.

117. Defendant ESS Metron was notified on or before April 12, 2024 of the loss.

118. As a result of Defendant ESS Metron's breach of the implied warranty of fitness for a particular purpose, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

119. As a direct and proximate result of Defendant ESS Metron's breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

120. As a result of the damages caused by Defendant ESS Metron of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

121. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XI.
## COUNT SEVEN – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANT ZINCFIVE

122. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

123. Defendant ZincFive impliedly warranted that the battery units were fit for the particular purpose of providing safe, reliable backup electrical power within the data center's UPS Battery System.

124. Defendant ZincFive, at the time of contracting with Defendant ESS Metron knew the particular purpose of the UPS and that the UPS and Battery Systems were to be used in a Data Center.

125. Defendant ZincFive markets their Battery Systems to be used in Data Centers.

126. Plaintiff Sabey relied on Defendant ZincFive to provide a UPS free from defects.

127. Rack 5 of the UPS system that contained ZincFive Battery Systems that failed and caused the fire.

128. The UPS was not fit for such particular purpose.

129. Plaintiff Sabey reasonably relied on Defendant ZincFive's skill or judgement to select and furnish suitable goods, including the Battery Systems used in the UPS.

130. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive.

131. Defendant ZincFive was notified on or before April 12, 2024 of the loss.

132. As a result of Defendant ZincFive's breach of the implied warranty of fitness for a particular purpose, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

133. As a direct and proximate result of Defendant ZincFive's breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

134. As a result of the damages caused by Defendant ZincFive of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

135. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XII.
## COUNT EIGHT – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANT ZINCFIVE POWER

136. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

137. Defendant ZincFive Power impliedly warranted that the battery units were fit for the particular purpose of providing safe, reliable backup electrical power within the data center's UPS Battery.

138. Defendant ZincFive Power, at the time of contracting with Defendant ESS Metron knew the particular purpose of the UPS and that the UPS and Battery Systems were to be used in a Data Center.

139. Defendant ZincFive Power markets their Battery Systems to be used in Data Centers.

140. Plaintiff Sabey relied on Defendant ZincFive Power to provide a UPS free from defects.

141. Rack 5 of the UPS system that contained ZincFive Power Battery Systems that failed and caused the fire.

142. The UPS was not fit for such particular purpose.

143. Plaintiff Sabey reasonably relied on Defendant ZincFive Power's skill or judgement to select and furnish suitable goods, including the Battery Systems used in the UPS.

144. The Battery Systems reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive Power.

145. Defendant ZincFive Power was notified on or before April 12, 2024 of the loss.

146. As a result of Defendant ZincFive Power's breach of the implied warranty of fitness for a particular purpose, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

147. As a direct and proximate result of Defendant ZincFive Power's breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

148. As a result of the damages caused by Defendant ZincFive Power of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

149. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XIII.
## COUNT NINE – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST DEFENDANT ZINCFIVE, INC.

150. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

151. Defendant ZincFive, Inc. impliedly warranted that the battery units were fit for the particular purpose of providing safe, reliable backup electrical power within the data center's UPS Battery Systems.

152. Defendant ZincFive, at the time of contracting with Defendant ESS Metron knew the particular purpose of the UPS and that the UPS and Battery Systems were to be used in a Data Center.

153. Defendant ZincFive, Inc markets their Battery Systems to be used in Data Centers.

154. Plaintiff Sabey relied on Defendant ZincFive, Inc to provide a UPS free from defects.

155. Rack 5 of the UPS system that contained ZincFive, Inc Battery Systems that failed and caused the fire.

156. The UPS was not fit for such particular purpose.

157. Plaintiff Sabey reasonably relied on Defendant ZincFive, Inc's skill or judgement to select and furnish suitable goods, including the Battery Systems used in the UPS.

158. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive Inc.

159. Defendant ZincFive, Inc was notified on or before April 12, 2024 of the loss.

160. As a result of Defendant ZincFive, Inc's breach of the implied warranty of fitness for a particular purpose, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

161. As a direct and proximate result of Defendant ZincFive Inc's breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

162. As a result of the damages caused by Defendant ZincFive Inc. of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

163. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XIV.
## COUNT TEN – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEFENDANT ESS METRON

164. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as thought fully set forth herein.

165. Defendant ESS Metron designed, manufactured, installed, supplied, and/or sold the subject UPS, and were merchants with respect to goods of the kind purchased by Plaintiff Sabey.

166. Defendant ESS Metron impliedly warranted that the subject UPS was of merchantable quality and fit for the ordinary purpose for which such goods are used.

167. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ESS Metron.

168. Defendant ESS Metron breached the implied warranty of merchantability in one or more ways:

a. Designing, manufacturing, installing, supplying, and/or selling a UPS that did not pass without an objection in the industry;
b. Designing, manufacturing, installing, supplying, and/or selling a UPS that was not of fair and average quality; and/or
c. Designing, manufacturing, installing, supplying, and/or selling a UPS that was not fit for the ordinary purposes to which it would reasonably and foreseeably be put.

169. Plaintiff Sabey reasonably relied on the implied warranty of merchantability.

170. The UPS containing the ZincFive Battery Systems caught fire.

171. Defendant ESS Metron was made aware of the fire on or about April 12, 2024.

172. As a result of Defendant ESS Metron's breach of the implied warranty of merchantability, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

173. As a direct and proximate result of Defendant ESS Metron's breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

174. As a result of the damages caused by Defendant ESS Metron of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

175. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

**XV.**

## COUNT ELEVEN – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEFENDANT ZINCFIVE

176. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

177. Defendant ZincFive designed, manufactured, installed, supplied, and/or sold the subject battery units, and were merchants with respect to goods of the kind purchased by Plaintiff Sabey.

178. Defendant ZincFive impliedly warranted that the battery units was of merchantable quality and fit for the ordinary purpose for which such goods are used.

179. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive.

180. Defendant ZincFive breached the implied warranty of merchantability in one or more of the following ways:

a. Designing, manufacturing, installing, supplying, and/or selling battery units that did not pass without an objection in the industry;
b. Designing, manufacturing, installing, supplying, and/or selling battery units that were not of fair and average quality; and/or
c. Designing, manufacturing, installing, supplying, and/or selling battery units that were not fit for the ordinary purposes to which it would reasonably and foreseeably be put.

181. Plaintiff Sabey reasonably relied on the implied warranty of merchantability.

182. The UPS containing the ZincFive Battery Systems caught fire.

183. Defendant ZincFive was made aware of the fire on or about April 12, 2024.

184. As a result of Defendant ZincFive's breach of the implied warranty of merchantability, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

185. As a direct and proximate result of Defendant ZincFive's breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

186. As a result of the damages caused by Defendant ZincFive of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

187. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XVI.
## COUNT TWELVE – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEFENDANT ZINCFIVE POWER

188. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

189. Defendant ZincFive Power designed, manufactured, installed, supplied, and/or sold the subject battery units, and were merchants with respect to goods of the kind purchased by Plaintiff Sabey.

190. Defendant ZincFive Power impliedly warranted that the battery units was of merchantable quality and fit for the ordinary purpose for which such goods are used.

191. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive Power.

192. Defendant ZincFive Power breached the implied warranty of merchantability in one or more of the following ways:

d. Designing, manufacturing, installing, supplying, and/or selling battery units that did not pass without an objection in the industry;
e. Designing, manufacturing, installing, supplying, and/or selling battery units that were not of fair and average quality; and/or
f. Designing, manufacturing, installing, supplying, and/or selling battery units that were not fit for the ordinary purposes to which it would reasonably and foreseeably be put.

193. Plaintiff Sabey reasonably relied on the implied warranty of merchantability.

194. The UPS containing the ZincFive Power Battery Systems caught fire.

195. Defendant ZincFive Power was made aware of the fire on or about April 12, 2024.

196. As a result of Defendant ZincFive Power's breach of the implied warranty of merchantability, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

197. As a direct and proximate result of Defendant ZincFive Power's breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

198. As a result of the damages caused by Defendant ZincFive Power of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

199. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XVII.
## COUNT THIRTEEN – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEFENDANT ZINCFIVE, INC.

200. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

201. Defendant ZincFive, Inc. designed, manufactured, installed, supplied, and/or sold the subject battery units, and were merchants with respect to goods of the kind purchased by Plaintiff Sabey.

202. Defendant ZincFive, Inc. impliedly warranted that the battery units was of merchantable quality and fit for the ordinary purpose for which such goods are used.

203. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive, Inc.

204. Defendant ZincFive, Inc. breached the implied warranty of merchantability in one or more of the following ways:

g. Designing, manufacturing, installing, supplying, and/or selling battery units that did not pass without an objection in the industry;
h. Designing, manufacturing, installing, supplying, and/or selling battery units that were not of fair and average quality; and/or
i. Designing, manufacturing, installing, supplying, and/or selling battery units that were not fit for the ordinary purposes to which it would reasonably and foreseeably be put.

205. Plaintiff Sabey reasonably relied on the implied warranty of merchantability.

206. The UPS containing the ZincFive, Inc. Battery Systems caught fire.

207. Defendant ZincFive, Inc. was made aware of the fire on or about April 12, 2024.

208. As a result of Defendant ZincFive, Inc.'s breach of the implied warranty of merchantability, Plaintiff Sabey has suffered extensive damages, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

209. As a direct and proximate result of Defendant ZincFive, Inc.'s breach of their duties owed, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

210. As a result of the damages caused by Defendant ZincFive Inc. of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

211. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XVIII.
## COUNT FOURTEEN – VICARIOUS LIABILITY AGAINST DEFENDANT ESS METRON FOR DEFENDANT ZINCFIVE

212. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

213. Upon information and belief, Defendant ESS Metron had a subcontractor/sub-subcontractor relationship with Defendant ZincFive at the time of the incident at the Subject Property.

214. Upon information and belief, Defendant ZincFive provided the battery units under the contract with Defendant ESS Metron.

215. As outlined above, Defendant ZincFive was negligent in the manufacturing of its products in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail and damage the property of consumers.

216. As outlined above, Defendant ZincFive's negligence resulted in the damage claimed in this petition.

217. Upon information and belief, Defendant ZincFive was acting in the course and scope of the contract with Defendant ESS Metron at the time Defendant ZincFive's negligence caused the damages claimed in this petition.

218. Because Defendant ZincFive was acting in the course and scope of their contract with Defendant ESS Metron at the time of their negligence, Defendant ESS Metron is liable under the doctrine of respondeat superior.

219. As a result of Defendant ZincFive's negligence, Plaintiff Sabey has suffered extensive damage, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

220. As a direct and proximate result of Defendant ZincFive's negligence and Defendant ESS Metron's liability for said negligence under the doctrine of respondeat superior, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

221. As a result of the damages caused by Defendant ZincFive of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

222. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XIX.
## COUNT FIFTEEN – VICARIOUS LIABILITY AGAINST DEFENDANT ESS

**METRON FOR DEFENDANT ZINCFIVE POWER**

223. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

224. Upon information and belief, Defendant ESS Metron had a subcontractor/sub-subcontractor relationship with Defendant ZincFive Power at the time of the incident at the Subject Property.

225. Upon information and belief, Defendant ZincFive Power provided the battery units under the contract with Defendant ESS Metron.

226. As outlined above, Defendant ZincFive Power was negligent in the manufacturing of its products in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail and damage the property of consumers.

227. As outlined above, Defendant ZincFive Power's negligence resulted in the damage claimed in this petition.

228. Upon information and belief, Defendant ZincFive Power was acting in the course and scope of the contract with Defendant ESS Metron at the time Defendant ZincFive Power's negligence caused the damages claimed in this petition.

229. Because Defendant ZincFive Power was acting in the course and scope of their contract with Defendant ESS Metron at the time of their negligence, Defendant ESS Metron is liable under the doctrine of respondeat superior.

230. As a result of Defendant ZincFive Power's negligence, Plaintiff Sabey has suffered extensive damage, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

231. As a direct and proximate result of Defendant ZincFive Power's negligence and Defendant ESS Metron's liability for said negligence under the doctrine of respondeat superior, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

232. As a result of the damages caused by Defendant ZincFive Power of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

233. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XX.
## COUNT SIXTEEN – VICARIOUS LIABILITY AGAINST DEFENDANT ESS METRON FOR DEFENDANT ZINCFIVE, INC.

234. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

235. Upon information and belief, Defendant ESS Metron had a subcontractor/sub-subcontractor relationship with Defendant ZincFive, Inc. at the time of the incident at the Subject Property.

236. Upon information and belief, Defendant ZincFive, Inc. provided the battery units under the contract with Defendant ESS Metron.

237. As outlined above, Defendant ZincFive, Inc. was negligent in the manufacturing of its products in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail and damage the property of consumers.

238. As outlined above, Defendant ZincFive, Inc.'s negligence resulted in the damage claimed in this petition.

239. Upon information and belief, Defendant ZincFive, Inc. was acting in the course and scope of the contract with Defendant ESS Metron at the time Defendant ZincFive, Inc.'s negligence caused the damages claimed in this petition.

240. Because Defendant ZincFive, Inc. was acting in the course and scope of their contract with Defendant ESS Metron at the time of their negligence, Defendant ESS Metron is liable under the doctrine of respondeat superior.

241. As a result of Defendant ZincFive, Inc.'s negligence, Plaintiff Sabey has suffered extensive damage, including damage to the Subject Property and other incidental and consequential damages, all to be proved at trial.

242. As a direct and proximate result of Defendant ZincFive, Inc.'s negligence and Defendant ESS Metron's liability for said negligence under the doctrine of respondeat superior, Plaintiff Sabey incurred damages, for which Plaintiff FMIC was required to pay in accordance with the insurance policy, and did in fact pay for, which Plaintiff FMIC now makes claim.

243. As a result of the damages caused by Defendant ESS Metron of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

244. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XXI.
## COUNT SEVENTEEN– STRICT PRODUCT LIABILITY AGAINST DEFENDANT ZINCFIVE

245. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

246. As the manufacturer of the battery units contained in the UPS at the subject Property, Defendant ZincFive owed a duty to consumers, like Plaintiff Sabey, to manufacture its product in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail, and damage the property of consumers.

247. Defendant ZincFive's Battery System deviated from the intended specficaitions as the batteries provided for the UPS were leaking, failing, and were being replaced as the failures were being discovered.

248. Defendant ZincFive breached its duty owed to consumers, like Plaintiff Sabey, when it failed to manufacture the battery units in a reasonable, safe manner, and free from defects, and not in accordance with industry standards, so its product would not fail and cause a fire, which it did on March 22, 2024.

249. It was foreseeable to Defendant ZincFive, or reasonably should have been foreseeable to Defendant ZincFive, that if it manufactured the subject battery units in an unreasonable, unsafe, and defective condition, not in accordance with industry standards, the UPS would fail and cause property damage, as it did on March 22, 2024.

250. At the time of the fire loss at the Subject Property, the ZincFive battery units were in the same condition as they were at the time they left the care, custody, and control of Defendant ZincFive.

251. The unreasonable, unsafe, and defective condition was not known to Plaintiff Sabey, and could not have been known by Plaintiff Sabey based upon a reasonable and prudent inspection of Defendant ZincFive's product.

252. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive.

253. As a direct, proximate, and foreseeable result of Defendant ZincFive's breach of its duties owed to consumers, like Plaintiff Sabey, the battery units manufactured by Defendant ZincFive failed, and caused significant damage to the subject property on March 22, 2024.

254. As a result of the damage caused by Defendant ZincFive's breach of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payments to or on behalf of Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

255. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy incorporated herein by reference, Plaintiff FMIC is subrogated to the rights of United to the extent of the payments made, or to be made, by Plaintiff FMIC in compensation for the aforementioned damage pursuant to the insurance policy incorporated herein by reference.

256. As a result of the damages caused by Defendant ZincFive of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

**XXII.**

**COUNT EIGHTEEN– STRICT PRODUCT LIABILITY AGAINST DEFENDANT ZINCFIVE POWER**

257. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

258. As the manufacturer of the battery units contained in the UPS at the subject Property, Defendant ZincFive Power owed a duty to consumers, like Plaintiff Sabey, to manufacture its product in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail, and damage the property of consumers.

259. Defendant ZincFive Power's Battery System deviated from the intended specifications as the batteries provided for the UPS were leaking, failing, and were being replaced as the failures were being discovered.

260. Defendant ZincFive Power breached its duty owed to consumers, like Plaintiff Sabey, when it failed to manufacture the battery units in a reasonable, safe manner, and free from defects, and not in accordance with industry standards, so its product would not fail and cause a fire, which it did on March 22, 2024.

261. It was foreseeable to Defendant ZincFive Power, or reasonably should have been foreseeable to Defendant ZincFive Power, that if it manufactured the subject battery units in an unreasonable, unsafe, and defective condition, not in accordance with industry standards, the UPS would fail and cause property damage, as it did on March 22, 2024.

262. At the time of the fire loss at the Subject Property, the ZincFive Power battery units were in the same condition as they were at the time they left the care, custody, and control of Defendant ZincFive Power.

263. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive Power.

264. The unreasonable, unsafe, and defective condition was not known to Plaintiff Sabey, and could not have been known by Plaintiff Sabey based upon a reasonable and prudent inspection of Defendant ZincFive Power's product.

265. As a direct, proximate, and foreseeable result of Defendant ZincFive Power's breach of its duties owed to consumers, like Plaintiff Sabey, the battery units manufactured by Defendant ZincFive Power failed, and caused significant damage to the subject property on March 22, 2024.

266. As a result of the damage caused by Defendant ZincFive Power's breach of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payments to or on behalf of Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

267. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy incorporated herein by reference, Plaintiff FMIC is subrogated to the rights of United to the extent of the payments made, or to be made, by Plaintiff FMIC in compensation for the aforementioned damage pursuant to the insurance policy incorporated herein by reference.

268. As a result of the damages caused by Defendant ZincFive Power of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

269. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

**XXIII.**
**COUNT NINETEEN– STRICT PRODUCT LIABILITY AGAINST DEFENDANT ZINCFIVE, INC.**

270. The Plaintiffs restate and re-allege each and every allegation contained in the foregoing Paragraphs as though fully set forth herein.

271. As the manufacturer of the battery units contained in the UPS at the subject Property, Defendant ZincFive, Inc. owed a duty to consumers, like Plaintiff Sabey, to manufacture its product in a reasonable and safe condition, free from defects, and in accordance with industry standards so that the product would not fail, and damage the property of consumers.

272. Defendant ZincFive Inc.'s Battery System deviated from the intended specifications as the batteries provided for the UPS were leaking, failing, and were being replaced as the failures were being discovered.

273. Defendant ZincFive, Inc. breached its duty owed to consumers, like Plaintiff Sabey, when it failed to manufacture the battery units in a reasonable, safe manner, and free from defects, and not in accordance with industry standards, so its product would not fail and cause a fire, which it did on March 22, 2024.

274. It was foreseeable to Defendant ZincFive, Inc., or reasonably should have been foreseeable to Defendant ZincFive, Inc., that if it manufactured the subject battery units in an unreasonable, unsafe, and defective condition, not in accordance with industry standards, the UPS would fail and cause property damage, as it did on March 22, 2024.

275. At the time of the fire loss at the Subject Property, the ZincFive, Inc. battery units were in the same condition as they were at the time they left the care, custody, and control of Defendant ZincFive, Inc..

276. The Battery System reached the UPS and Plaintiff Sabey in the same condition as when it left the control of Defendant ZincFive, Inc.

277. The unreasonable, unsafe, and defective condition was not known to Plaintiff Sabey, and could not have been known by Plaintiff Sabey based upon a reasonable and prudent inspection of Defendant ZincFive, Inc.'s product.

278. As a direct, proximate, and foreseeable result of Defendant ZincFive, Inc.'s breach of its duties owed to consumers, like Plaintiff Sabey, the battery units manufactured by Defendant ZincFive, Inc. failed, and caused significant damage to the subject property on March 22, 2024.

279. As a result of the damage caused by Defendant ZincFive, Inc.'s breach of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payments to or on behalf of Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

280. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy incorporated herein by reference, Plaintiff FMIC is subrogated to the rights of United to the extent of the payments made, or to be made, by Plaintiff FMIC in compensation for the aforementioned damage pursuant to the insurance policy incorporated herein by reference.

281. As a result of the damages caused by Defendant ZincFive Inc. of its duties owed to Plaintiff Sabey, Plaintiff FMIC was obligated to, and did in fact issue payment to Plaintiff Sabey, in accordance with the insurance policy that is incorporated herein by reference.

282. In accordance with common law principles of equitable and/or legal subrogation, as well as the terms of the policy, Plaintiff FMIC is subrogated to the rights of Plaintiff Sabey to

the extent of the payments made, or to be made, by Plaintiff FMIC's in compensation for the aforementioned damage pursuant to the insurance policy.

## XXIV.
## DAMAGES

283. Plaintiffs hereby assert their claim for reimbursement of damages in connection with the foregoing. As a direct, proximate, and foreseeable result of the above-described conduct, acts and/or omissions of the Defendants, Plaintiffs suffered damages exceeding $250,000.00, exclusive of interest, statutory or punitive damages and penalties, and attorneys' fees and costs for which it now makes claim.

284. Plaintiffs assert their claim for reimbursement from Defendants, together with pre-judgment and post-judgment interest, costs, and any such other and further relief to which it may show itself to be justly entitled.

285. All conditions precedent to Plaintiffs' recovery from Defendants have been performed or have occurred as required.

## XXV.
## NOTICE PURSUANT TO RULE 193.7

286. Pursuant to Rule 193.7, Texas Rules of Civil Procedure, Plaintiffs hereby provide notice to Defendants ESS Metron ZincFive, ZincFive Power, and ZincFive, Inc. of Plaintiffs' intent to utilize all documents and tangible things produced in response to discovery, including all deposition exhibits and documents obtained by oral, video and written question depositions in any pretrial proceeding or at trial.

## XXVI.
## PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer herein and that upon trial of this cause, Plaintiffs be awarded judgment against Defendants in an amount in excess of the jurisdictional limits of this Court, pre-judgment interest at the applicable statutory rate on those elements of damages as allowed by law, post-judgment interest at the applicable statutory rate from the date of the judgment until paid, that Plaintiffs recover their costs of court expended; and that Plaintiffs have all other and further relief, both general and special, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

BUTLER WEIHMULLER KATZ CRAIG LLP

HOBART M. HIND, ESQ.
Texas Bar No.: 24076926
hhind@butler.legal
HANNAH L. CONRARDY, ESQ.
Texas Bar No.: 24087906
hconrardy@butler.legal
Mail Center: 400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (469) 857-7870
Facsimile: (214) 812-9226
*Attorneys for Plaintiff, Factory Mutual Insurance Company as subrogee of Sabey Construction, Inc.*

EXHIBIT
A



# Data Centers

Nickel-zinc battery solutions for mission-critical data centers

LET'S GET STARTED



THE PROBLEM

## Uninterrupted service for the mission-critical

Business data, operations, revenue, and reputation can be compromised in an instant with an unexpected power outage. With

We use cookies to improve your experience on our site.
By clicking "Accept" you consent to our use of cookies. Cookie Policy and Privacy Policy.

MANAGE PREFERENCES REJECT ACCEPT

CONTACT PRODUCT SUPPORT

Five




THE SOLUTION

# Why nickel-zinc?

Nickel-zinc electrochemistry performs at or above other battery technologies while delivering safer, more sustainable, and instantaneous power.

## Powerful

High power density delivers the industry's smallest energy storage footprint.

## Safe

Nickel-zinc is non-flammable and exhibits no thermal runaway.

## Reliable

Weak or depleted nickel-zinc cells remain conductive, providing continuous battery string operation.

## Sustainable

Nickel-zinc batteries are fully recyclable and have a low carbon footprint.

We use cookies to improve your experience on our site.
By clicking "Accept" you consent to our use of cookies. Cookie Policy and Privacy Policy.

CONTACT PRODUCT SUPPORT

Five




# BC Series UPS Battery Cabinets

The ZincFive BC 2 AI UPS Battery Cabinet supports both AI dynamic workloads and outage protection within a single, compact footprint. Powered by nickel-zinc battery technology, the BC Series was designed for data centers that demand a safe, reliable, and sustainable way to manage rapid, repeated power surges.

Industry’s smallest footprint

Low total cost of ownership

Safe and sustainable battery technology

VIEW PRODUCT

We use cookies to improve your experience on our site.
By clicking "Accept" you consent to our use of cookies. Cookie Policy and Privacy Policy.

Five




# Data Center
# ) Immediate

capacity will have to dramatically expand. Data
ıfield projects that modernize older data

# Nickel-Zinc UPS Battery Cabine
# an Easy Upgrade at Data Cente

As the world's first NiZn BESS (Battery Energy Storage Solution) product featuring backward and forwa
designed for lead-acid batteries, ZincFive's BC Series UPS Battery Cabinet offers a drop-in replaceme
UPS installations utilizing lead-acid batteries.

VIEW PAPER

# You Have Data, We Have Solutions

We use cookies to improve your experience on our site.
By clicking "Accept" you consent to our use of cookies. Cookie Policy and Privacy Policy.

CONTACT PRODUCT SUPPORT

Five

## Get the latest on Nickel-Zinc Battery Technology and Power Solutions

Enter your email

SIGN ME UP

Five

**Company**

About

Leadership

Boards

Careers

News

Awards & Recognition

Sustainability & Corporate Responsibility

Investors

**Products**

BC Series UPS Battery Cabinets

NiZn Retrofit Kit

Monobloc Battery

Cylindrical Cells

**Industries**

Data Centers

Industrial Engine Starting

Intelligent Transportation

**Our Chemistry**

**Resources**

Technical Documents

Papers

Blog

Industry Insights Reports

**Connect**

Contact

Support

X LinkedIn YouTube

© 2026 by ZincFive. All Rights Reserved. | Privacy Policy | Do Not Sell My Personal Information

We use cookies to improve your experience on our site.
By clicking "Accept" you consent to our use of cookies. Cookie Policy and Privacy Policy.